* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. Following its review, the Full Commission finds no good grounds to receive further evidence and upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. An employment relationship existed between the plaintiff and defendant on September 15, 2001.
3. Defendant is a duly qualified self-insured.
4. All parties have been correctly named, and there is no question as to misjoinder or non-joinder of parties.
5. Plaintiff sustained an injury by accident on or about September 15, 2001. The injury arose out of the employment and is compensable.
In addition, the parties stipulated to certain medical records, discovery responses, plaintiff's personnel file, a photograph, deposition transcripts and all Industrial Commission forms filed in this matter.
 * * * * * * * * * * *
Based upon all the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the hearing before the Deputy Commissioner, plaintiff was 35 years of age. She has an Associate's Degree in nursing and a Bachelor's Degree in health science with a minor in psychology. Defendant employed plaintiff as a nurse from January 1997 through September 2001.
2. On September 15, 2001, plaintiff sustained an admittedly compensable injury when she twisted her knee while moving a patient and felt a pop, followed by the immediate onset of pain and swelling. At the time of injury, plaintiff's average weekly wage was $807.29, yielding a compensation rate of $538.22. *Page 3 
3. Defendant accepted the compensability of plaintiff's injury by filing a Form 60 dated November 9, 2001, and directed her medical care to Dr. James P. Flanagan, an orthopaedic surgeon. Dr. Flanagan diagnosed an ACL tear as well as a tear of the medial meniscus. Both of these conditions were repaired surgically in November 2001. However, plaintiff continued to experience pain and weakness in her left leg after the surgery.
4. After March 28, 2002, plaintiff returned to work for defendant, at wages equal to or greater than her pre-injury wage. In July 2002, plaintiff stopped working for defendant and accepted another job with the Veterans Administration Hospital.
5. Dr. Flanagan released plaintiff at maximum medical improvement in July 2002, with permanent restrictions of performing mostly seated work, limited periods of standing and walking, limited bending, stooping, stair climbing and no kneeling. At his deposition, Dr. Flanagan testified that he assigned a 25% permanent partial disability rating to plaintiff's left leg in large part due to the significant quadriceps weakness plaintiff had in her knee.
6. Beginning in July 2002, plaintiff held a variety of jobs for other employers. Most of these jobs were in the nursing field, although several were supervisory-level positions. Plaintiff remained gainfully employed throughout the remainder of 2002 and 2003. Her primary employment during that time was for Womack Army Hospital in Fayetteville, North Carolina.
7. Plaintiff returned to Dr. Flanagan on November 5, 2002. At that appointment, plaintiff reported that on September 22, 2002, while working for a different employer, she had a "fall where she was coming out of an elevator, tripped and landed on the left knee." Plaintiff testified that her fall was due to instability of her left leg. On that day, Dr. Flanagan ordered x-rays of the knee, which he testified, showed no evidence of an acute fracture. He diagnosed plaintiff with a contusion and opined that the graft was still fine. *Page 4 
8. On February 2, 2004, plaintiff returned to Dr. Flanagan noting continuing and worsening problems with the left knee. At that point, Dr. Flanagan obtained an MRI that revealed a likely re-tear of the ACL.
9. Dr. Flanagan treated plaintiff's re-tear of the ACL conservatively, given the difficulties that she experienced in recovering from her first surgery. Dr. Flanagan continued to treat plaintiff through most of 2004 and released her from work from September 23, 2004 through December 2, 2004.
10. Dr. Flanagan signed an Industrial Commission Form 18M, Employee's Application for Additional Medical Compensation, on August 19, 2004, indicating that there was a substantial risk that plaintiff could need further surgery, hospitalizations, rehabilitation and medications. When asked about the Form 18M at his deposition, Dr. Flanagan testified, "it was a possibility" that plaintiff was going to need more treatment on her knee in the future. He further testified that "it would be pure speculation" as to whether or not plaintiff would need future medical treatment for her knee.
11. In January 2006, plaintiff presented to Dr. Schaefer, an orthopedic surgeon. Dr. Schaefer diagnosed a failed ACL repair and performed another surgery to correct that condition on March 17, 2006. At the time, plaintiff did not request authorization for this treatment from defendant. Due to the surgery, Dr. Schaefer took plaintiff out of work on March 17, 2006, and plaintiff returned to work April 1, 2006.
12. On September 25, 2006, due to dissatisfaction with Dr. Schaefer, plaintiff presented to Dr. William E. Garrett, Jr., an orthopaedic surgeon at Duke. At the time, plaintiff did not request authorization for this treatment from defendant. Dr. Garrett ultimately performed *Page 5 
additional surgery on October 3, 2006, to remove a cyst and hardware left behind by the prior procedure.
13. Due to her October 3, 2006 surgery, Dr. Garrett took plaintiff out of work from October 3, 2006 through October 10, 2006, when he released her to return to work in the same job that she had been performing prior to seeing him. At the time of Dr. Garrett's deposition on March 26, 2007, plaintiff continued to receive ongoing treatment from him for her left knee condition.
14. With regard to the cause of plaintiff's re-tear of her ACL, Dr. Garrett testified that her re-injury "is all related to the initial ACL injury." On cross-examination, Dr. Garrett explained that "the ACL, when it tears, usually is followed by a fall" as opposed to a fall causing an ACL tear. Dr. Garrett further explained that "just a fall by itself . . . is not the usual cause of an ACL injury." Dr. Garrett also testified, "I don't feel more than fifty-one percent likely that it was a new injury unrelated to the previous injury." The Commission gives greater weight to the causation opinion of Dr. Garrett, as opposed to that of Dr. Flanagan, because Dr. Garrett operated on plaintiff's knee to address the condition that is the subject of this dispute.
15. Based upon the greater weight of the credible evidence of record, the Commission finds that plaintiff's re-torn ACL for which she treated with Dr. Schaefer, and continues to treat with Dr. Garrett is causally related to her compensable injury of September 15, 2001.
16. Plaintiff's continued treatment with Dr. Garrett is reasonably required to effect a cure and provide relief of plaintiff's left knee condition.
17. As plaintiff's treating physician, Dr. Garrett is in the best position to determine whether there is a substantial risk that plaintiff will require future medical treatment. With regard to this issue, Dr. Garrett testified that plaintiff's need for knee replacement surgery in the *Page 6 
future "is not foreseeable now." Accordingly, based upon the greater weight of the credible medical evidence of record, there is not a substantial risk at the preset time that plaintiff will require knee replacement surgery in the future.
18. After review of plaintiff's affidavit and time records received into evidence after the hearing before the Full Commission, the Full Commission finds the fee of $3,587.24 related to the appeal to be reasonable.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On September 15, 2001, plaintiff sustained an admittedly compensable injury when she twisted her knee while moving a patient. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes a causal relationship between plaintiff's injury by accident on September 15, 2001 and her ongoing left knee condition for which she treated with Drs. Flanagan and Schaefer and therefore, plaintiff's ongoing left knee condition is compensable. N.C. Gen. Stat. § 97-2(6).
3. As a result of her compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $538.22 for the following periods of time: September 23, 2004 through December 2, 2004; March 17, 2006 through April 1, 2006; and October 3, 2006 through October 10, 2006. Plaintiff was out of work due to her knee condition for each of these periods due to orders of her treating physicians, Drs. Flanagan, Schaefer and Garrett. N.C. Gen. Stat. § 97-29. *Page 7 
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her ongoing left knee condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including payment of the treatment provided by Drs. Flanagan, Schaefer and Garrett. N.C. Gen. Stat. §§ 97-2(19) and97-25.
5. Dr. Garrett is approved as plaintiff's treating physician. N.C. Gen. Stat. § 97-25.
6. At the present time, plaintiff is not entitled to approval of lifetime medical treatment for her left condition. N.C. Gen. Stat. § 97-25.1.
7. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by insurers when the Commission orders the insurer to make or continue payments of compensation to the injured employee.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay temporary total disability compensation to plaintiff in the amount of $538.22 for the following periods of time: September 23, 2004 through December 2, 2004; March 17, 2006 through April 1, 2006; and October 3, 2006 through October 10, 2006. Because this compensation has accrued, it shall be paid in a lump sum. This Opinion and Award does not address any periods of disability occurring after October 10, 2006.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as may reasonably be required to effect a cure, provide relief, or *Page 8 
lessen the period of disability, including payment of the treatment provided by Drs. Flanagan, Schaefer and Garrett.
3. Dr. Garrett is approved as plaintiff's treating physician.
4. Defendant shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including payment of the treatment provided by Drs. Flanagan, Schaefer and Garrett.
5. Plaintiff's request for approval of lifetime medical treatment is denied.
6. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from the current disability compensation due plaintiff and paid directly to plaintiff's former counsel.
7. Defendant shall pay an expert witness fee to Dr. William E. Garrett, Jr. in the amount of $760.00 for his testimony in this matter.
8. Defendant shall pay to plaintiff's present counsel a reasonable attorney's fee in the amount of $3,587.24 pursuant to N.C. Gen. Stat. § 97-88. This fee shall be taxed as costs to the defendant and shall not be deducted from any other sums due plaintiff or plaintiff's counsel.
This the __ day of February 2008.
S/________________ PAMELA T. YOUNG CHAIR
 CONCURRING: *Page 9 
 S/________________ BUCK LATTIMORE COMMISSIONER
 S/________________ DANNY L. McDONALD COMMISSIONER *Page 1